The Honorable W.R. "Bud" Rice State Representative P.O. Box 2195 Waldron, AR 72958-2195
Dear Representative Rice:
This is in response to your request for an opinion on the following questions:
 (1) Who is responsible for establishing the districts or wards within a city; and, who notifies whoever is responsible when and if it needs to be done?
 (2) Once notified, how long do they have to establish the districts or wards?
 (3) How often are the districts or wards reapportioned?
The answers to these questions appear to depend upon whether the particular city involved is a first or second class city and, if a first-class city, upon its type of government. It is my understanding that your questions concern the city of Waldron, Arkansas, and that Waldron is a first-class city operating under the mayor-council form of government.
Arkansas Code Annotated Section 14-43-307(b)(2) (Cum. Supp. 1993) provides, with reference to cities of the first class,:
 All such cities choosing to elect all aldermen by wards or in part by wards shall provide, in the manner provided by law, for the establishment of wards of substantially equal population in order that each alderman elected from each ward shall represent substantially the same number of people in the city.
I can find no statutory provision regarding the initial establishment of wards in cities of the first class utilizing the mayor-council form of government; thus, I cannot provide a complete answer to your first two questions. Arkansas Code Annotated Section 14-43-311 (1987) provides for the redistricting of wards in first class cities, however, and it has been held applicable to the redistricting of wards in cities utilizing the aldermanic form of government. See Moorman v. Lynch, 310 Ark. 525, 837 S.W.2d 886 (1992). It states, in pertinent part:
 (a)(1)(A) City councils in cities of the first class shall have the authority to redistrict the wards in their city when they determine that the people can best be served by adding wards, combining wards, or changing ward boundary lines to equalize the population in the various wards.
 (B) It shall be the duty of the council to see that each ward has as nearly an equal population as would best serve the interest of the people of the city.
 (2)(A) Within ninety (90) days after redistricting, if one hundred (100) or more qualified electors in the city are dissatisfied with the redistricting of the city into wards, they shall have the authority to petition the circuit court.
 (B) The court, after due hearing, shall have authority to redistrict the city into such wards as the court shall deem best if the court finds that the redistricting action by the council was arbitrary and capricious.
Pursuant to these provisions, it appears that the city council is responsible for the establishment and redistricting of wards in cities of the first class utilizing the aldermanic or mayor-council form of government, and that redistricting may be done whenever the city council determines it is necessary to equalize the population of the various wards. A judicial means of challenging any such redistricting is also provided.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Catherine Templeton.
Sincerely, WINSTON BRYANT Attorney General
WB:cyh